IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| RECREATIONAL DATA SERVICES, LLC, an Alaska Limited Liability Company,<br><br>            Plaintiff,<br><br>   vs.<br><br>TRIMBLE NAVIGATION LIMITED, a California corporation; CABELA'S INCORPORATED, a Delaware corporation; AT&T MOBILITY LLC, a Delaware corporation; and ALASCOM, INC., an Alaskan corporation,<br><br>            Defendants. | Case No. 3:11-cv-00195-TMB<br><br><br>**O R D E R**<br>**REMANDING TO STATE COURT** |

## I. INTRODUCTION

Before the Court is Plaintiff Recreational Data Services ("RDS") with a Motion to Remand at Docket 25. RDS argues that removal was not proper in this case due to the presence of Alascom, Inc. ("Alascom") as a non-diverse party. Defendants Trimble Navigation Limited ("Trimble"), Cabela's Incorporated ("Cabela's"), and AT&T Mobility LLC ("AT&T") removed this case to federal court, arguing that the joinder of Alascom was fraudulent and intended only to defeat diversity jurisdiction. Defendants oppose remand on the grounds that RDS has not successfully stated any claim against Alascom in its Complaint. The Defendants have also filed individual

Motions to Dismiss at Dockets 9, 19, and 20. However, the Court cannot rule on the Motions to Dismiss unless and until it determines that this case is subject to federal jurisdiction.

For the reasons set forth below, the Motion to Remand is **GRANTED**.

## II. BACKGROUND

In early 2009, RDS and Trimble met to discuss a potential business opportunity, in which they would work together to develop software applications for GPS units and mobile devices, specifically designed to be used by outdoorsmen.[1] On March 13, 2009, RDS and Trimble entered into a non-disclosure agreement (the "Trimble Agreement"), to protect any "confidential and/or proprietary" information that might be shared between them while they discussed the project.[2] The project subsequently became known as the "Copper Center Project," named for Copper Center, Alaska, where much of the planning took place.

RDS alleges that, shortly after executing their non-disclosure agreement, Trimble and RDS entered into an unwritten but nonetheless binding partnership agreement (the "Partnership

---

[1] Dkt. 1, Exhibit 5 at 2.

[2] Dkt. 1, Exhibit 5 at 25.

Agreement") to develop the Copper Center Project.[3] Trimble strenuously denies that any such partnership agreement existed.

RDS and Trimble agreed that they would need the cooperation of a telecommunications service provider in order to successfully execute the Copper Center Project. In August of 2009, Brian Feucht, the president of RDS, contacted Michael T. Felix, the president of Alascom, which is an Alaska subsidiary of AT&T.[4] Feucht claims that Felix was introduced to him as the president of "AT&T Alascom."[5] Feucht and Felix discussed the Copper Center Project, and Felix "indicated that 'AT&T' might be interested," according to Feucht.[6] Felix put Feucht in touch with Brian Twiner, a manager of business development for AT&T. Feucht says that while he has little knowledge of AT&T's corporate structure, AT&T and Alascom did not give the impression of being separate corporate entities during his discussions with them.[7]

Feucht claims that he and Twiner agreed to the terms of a non-disclosure agreement for the Copper Center Project.[8] However, the

---

[3]     Dkt. 1, Exhibit 5 at 3.

[4]     Dkt. 25, Exhibit 2 at 2.

[5]     Dkt. 25, Exhibit 2 at 2.

[6]     Dkt. 25, Exhibit 2 at 2.

[7]     Dkt. 25, Exhibit 2 at 2-3.

[8]     Dkt. 25, Exhibit 2 at 3.

ORDER REMANDING TO STATE COURT - 3
3:11-CV-0195-TMB

non-disclosure agreement that AT&T eventually signed (the "AT&T Agreement") does not list RDS as a party. Instead it lists Trimble as a party, with AT&T "and its Affiliates" as the counterparty.[9] RDS argues that it was nonetheless a party to the AT&T agreement by virtue of its alleged Partnership Agreement with Trimble, because the AT&T Agreement is specifically directed to the Copper Center Project. Twiner acknowledges that he and Feucht attempted to negotiate a non-disclosure agreement that would encompass RDS, Trimble, and AT&T.[10] However, he claims that AT&T decided not to pursue any business opportunities with RDS, and that the AT&T Agreement was with Trimble alone.[11]

RDS and Trimble also sought the cooperation of Cabela's, which is a retailer of products for outdoorsmen, for the Copper Center Project. On February 11, 2011, Cabela's and RDS executed a non-disclosure agreement (the "Cabela's Agreement") to facilitate their discussions of the Copper Center Project.[12] RDS set up a meeting between representatives of RDS, Trimble, and Cabela's to discuss the project.

---

[9] Dkt. 25, Exhibit 1 at 5.

[10] Dkt. 35, Exhibit 2 at 2.

[11] Dkt. 35, Exhibit 2 at 2.

[12] Dkt. 1, Exhibit 5 at 38.

ORDER REMANDING TO STATE COURT - 4
3:11-CV-0195-TMB

Around the same time that RDS and Cabela's entered into the Cabela's Agreement, RDS alleges that Trimble began to equivocate about its desire to continue with the Copper Center Project. Prior to the scheduled meeting with Cabela's, Trimble informed RDS that it no longer wished to participate in the Copper Center Project., and that RDS was "free to pursue other partners."[13]

RDS decided to meet with Cabela's on the scheduled date, without Trimble. At the meeting, RDS alleges that it "discovered that Trimble had copied all of the Copper Center Project software, data, and proprietary trade secrets and had launched its own competing product through Cabela's marketing channel."[14] RDS further alleges that

> AT&T and Alascom, with full knowledge of the proprietary nature of RDS's technology and Trimble's misappropriation thereof, is now marketing, and developing devices to market, RDS's proprietary products in violation of the Cabela's Agreement, the Trimble Agreement, and its own nondisclosure agreement it has in place with the project partners.
>
> [...] Likewise, Cabela's is now providing a distribution channel for RDS's proprietary software, data trade secrets under the Hunt Recon mark through AT&T and Alascom.[15]

RDS filed its Complaint in Alaska Superior Court on September 2, 2011, alleging breach of contract, promissory

---

[13] Dkt. 1, Exhibit 5 at 6.

[14] Dkt. 1, Exhibit 5 at 6.

[15] Dkt. 1, Exhibit 5 at 6.

estoppel, interference with contract, fraud, and negligent misrepresentation. Defendants filed their notice of removal on October 3, 2011, arguing that there is complete diversity between the parties because Alascom, the only non-diverse defendant, had been fraudulently joined.

### III. LEGAL STANDARD

A lawsuit may be removed to federal court under 28 U.S.C. § 1441 so long as the suit could have been brought in federal court originally.[16] A defendant removing a case to federal court has the burden of establishing that the removal is proper.[17] A suit may be removed if removal jurisdiction pursuant to 28 U.S.C. § 1441 exists and the procedures for removal at 28 U.S.C. § 1446 are followed. Nevertheless, courts must strictly construe the removal statutes against removal and must reject removal jurisdiction if there is any doubt as to whether the removal is proper.[18] On a motion to remand, "the court resolves all ambiguity in favor of remand to state court."[19]

---

[16] *Sullivan v. First Affiliated Sec.*, Inc., 813 F.2d 1368, 1371 (9th Cir.), cert. denied, 484 U.S. 450, 108 S. Ct. 150 (1987).

[17] *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

[18] *Id.*

[19] *Hunter v. Philip Morris USA*, 582 F.3d 1039 1042 (9th Cir. 2009) (citing *Gaus v. Miles* at 566).

ORDER REMANDING TO STATE COURT - 6
3:11-CV-0195-TMB

## IV. DISCUSSION

Although Alascom did not join in the petition for removal, fraudulently-joined parties need not give their consent to removal.[20] The removing party bears the burden of proving fraudulent joinder "by clear and convincing evidence" in order to establish diversity jurisdiction under 28 U.S.C. § 1332.[21] Fraudulent joinder is a "'term of art'" that "does not necessarily involve 'fraud' as the term is commonly understood."[22] Rather, the removing party may prove fraudulent joinder by showing that "'the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state[.]'"[23] Although removal jurisdiction is evaluated "on the basis of the pleadings filed at the time of removal,"[24] "fraudulent joinder claims may be resolved by 'piercing the pleadings' and

---

[20] *United Computer Systems, Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002).

[21] *Hamilton Materials, Inc. v. Dow Chemical Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (citing *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir.1998)).

[22] *Ho v. State Farm Ins. Companies*, 117 F.3d 1425 (Table) at *1 n. 1 (9th Cir. 1997) (quoting *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir.1987)).

[23] *Hamilton Materials* at 1206 (quoting *McCabe* at 1339).

[24] *Sparta Surgical Corp. v. National Ass'n of Securities Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998).

considering summary judgment-type evidence such as affidavits and deposition testimony."[25]

There is a dispute between the parties about which causes of action were pled against Alascom in the original Complaint. In their petition to remove, Defendants took the position that RDS had only attempted to state breach of contract and promissory estoppel claims against Alascom. In its motion to remand, RDS asserts that in addition to the breach of contract and promissory estoppel claims, it also pled a claim for "Interference with Contract."[26]

### A. RDS Fails to State A Breach of Contract or Promissory Estoppel Claim Against Alascom

The Court agrees with Defendants that the Complaint gives little factual support for RDS's breach of contract and promissory estoppel claims against Alascom. The only alleged contract that Alascom could possibly have been bound by is the AT&T Agreement, to which AT&T "and its Affiliates" are parties. But RDS was not a formal signatory of the AT&T Agreement. RDS claims that it was a party to that contract by virtue of its alleged partnership with Trimble. However, RDS alleges no facts to establish that RDS and

---

[25] *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001).

[26] Dkt. 25 at 5. RDS also argues that it successfully pled claims for "Punitive Damages" and "Specific Enforcement, Preliminary Injunction and Permanent Injunction." These portions of the Complaint, however, are more accurately characterized as a prayer for relief, rather than a claim or cause of action.

Trimble ever entered into a partnership agreement, and the Trimble Agreement specifically provides that "[n]othing herein shall obligate either Party to enter into any business arrangements or agreements with the other Party."[27] In the absence of evidence of a Partnership Agreement between RDS and Trimble, RDS cannot assert a claim for breach of the AT&T Agreement.

Likewise, RDS gives no factual basis for its promissory estoppel claim against Alascom. RDS claims that Alascom "promised RDS that RDS had, and would continue to have the benefit of their partnership agreement and related agreements, and subsequent software development for the Copper Center Project in the future."[28] RDS claims to have relied on this promise to its detriment. But RDS does not cite any facts establishing that Alascom made such a promise to RDS, in word or deed. Thus, there is no factual basis for any promissory estoppel claim against Alascom.

### B. RDS Has Not Obviously Failed to State an Interference With Contract Claim Against Alascom

RDS argues in its motion for remand that it also pled a claim for interference with contract against Alascom. Under Alaska law, the elements of a claim for interference with contract are: "(1) an existing contract between it and a third party; (2) defendant's knowledge of the contract and intent to induce a breach; (3)

---

[27] Dkt. 1, Exhibit 5 at 26.

[28] Dkt. 1, Exhibit 5 at 12.

breach; (4) wrongful conduct of the defendant causing the breach; (5) damages; and (6) absence of privilege or justification for the defendant's conduct."[29]

Defendants give three reasons why the Complaint fails to state an interference with contract claim. First, Defendants argue that the Complaint fails to allege that Alascom "was aware of any contract between RDS and any other party."[30] The relevant section of the Complaint is unquestionably worded in a confusing way. RDS alleges that "Trimble knows, and at all times relevant knew, that RDS was either a party to or entitled to perform under the partnership agreement with Remington and/or Cabela's and/or AT&T and each Defendant intended to induce a breach thereof."[31] At first glance, this portion of the Complaint seems only to allege that Trimble was aware of the various agreements in place between the parties. And indeed, RDS admits that "[a]lthough Paragraph 43 purports to limit this claim to Trimble only, that was an oversight as supported by the balance of the section and fact that these

---

[29] *K & K Recycling, Inc. v. Alaska Gold Co.*, 80 P.3d 702, 717 (Alaska, 2003) (citing *Odom v. Lee*, 999 P.2d 755, 761 (Alaska, 2000)).

[30] Dkt. 35 at 17.

[31] Dkt. 1, Exhibit D at 8-9.

ORDER REMANDING TO STATE COURT - 10
3:11-CV-0195-TMB

charges are not limited to any defendant in the heading for each such count."[32]

Of course, for purposes of removal, the Court must consider the claims that were actually pled within the four corners of the Complaint, and not any claims that the plaintiff may have left out inadvertently. But although the Complaint is inartfully worded, RDS does allege that Alascom, along with the rest of the Defendants "intended to induce a breach" of the parties' various non-disclosure agreements with RDS. The Court notes that a "defendant's knowledge of the contract" and "intent to induce a breach" constitute a single element of an interference with contract claim, not separate elements.[33] Obviously, a defendant cannot intend to induce a breach of a contract of which it has no knowledge. Therefore, because RDS clearly alleged that "each Defendant," including Alascom, intended to cause a breach in the various non-disclosure agreements, it is implicit and indeed necessary that Alascom was aware of those agreements.

While RDS has provided no proof that it was a party to the non-disclosure agreements signed by Remington or AT&T, there is no question that RDS had such an agreement with Cabela's. It is reasonable to read RDS's Complaint as alleging that Alascom was

---

[32] Dkt. 25 at 5, n. 13.

[33] See *K & K Recycling* at 717.

Case 3:11-cv-00195-TMB   Document 48   Filed 04/19/12   Page 11 of 15

aware of the Cabela's Agreement and intended to induce Cabela's breach of that agreement. This reading of the Complaint is supported by RDS's factual allegation that "AT&T and Alascom, with full knowledge of the proprietary nature of RDS's technology and Trimble's misappropriation thereof, is now marketing [...] RDS's proprietary products in violation of the Cabela's Agreement[.]"[34] While this is not the only possible reading of the Complaint, on a motion to remand the Court must resolve "all ambiguities in favor of remand the case to state court."[35] For purposes of this Motion to Remand, the Court resolves the ambiguity in RDS's favor, and finds that it did allege that Alascom was aware of the Cabela's contract and intended to interfere with it.

The Court's conclusion also disposes of the Defendants' next argument, which is that "neither the Complaint nor Mr. Feucht's Affidavit contends that Alascom had intent to cause others to breach their agreements with RDS."[36] The Court has already discussed above how RDS's Complaint may be reasonably read to allege that Alascom intended to cause Cabela's to breach its non-disclosure

---

[34] Dkt. 1, Exhibit 5 at 6.

[35] *Hunter v. Philip Morris USA*, 582 F.3d 1039 1042 (9th Cir. 2009) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992)).

[36] Dkt. 35 at 17.

ORDER REMANDING TO STATE COURT - 12
3:11-CV-0195-TMB

agreement with RDS. The intent element of the interference claim is satisfied.

Finally, Defendants argue that "neither the Complaint nor Mr. Feucht's Affidavit asserts that Alascom took any action that caused others to breach their contractual obligations to RDS."[37] That is not correct. In the Complaint, RDS alleges that Alascom "is now marketing [...] RDS's proprietary products in violation of the Cabela's Agreement,"[38] and that "Cabela's is now providing a distribution channel for RDS's proprietary software, data trade secrets under the Hunt Recon mark through AT&T and Alascom."[39] Although the factual allegations are somewhat vague, RDS's theory of liability is clear enough: Alascom assisted Cabela's in breaching its non-disclosure agreement with RDS by marketing Cabela products that improperly use RDS's proprietary information. Since Alascom is largely the Alaska marketing arm of AT&T, the theory is not implausible on its face. Alascom's website bears AT&T's logo, and links to AT&T's website, where the allegedly improper software applications may be purchased.[40]

---

[37]  Dkt. 35 at 17.

[38]  Dkt. 1, Exhibit 5 at 6.

[39]  Dkt. 1, Exhibit 5 at 6.

[40]  Dkt. 25, Exhibit 1 at 9-10.

This is, without question, a thin factual basis for an interference with contract claim. Nonetheless, the presumptions which the Court must apply in evaluating the sufficiency of this claim are all in favor of remand. Defendants are required to show by "clear and convincing evidence" that RDS's failure to state a claim against Alascom is "obvious." The Court must remand if there is "any doubt" that Defendants have failed to meet this burden, resolving all ambiguities in favor of remand. The Court cannot say without any doubt that RDS "obviously" failed to state a claim against Alascom for interference with contract. Therefore, remand to state court is proper.

## V. CONCLUSION

Although its claims were inartfully pled, RDS did not obviously fail to state an interference with contract claim against Alascom, a non-diverse party. When there is any doubt as to the Court's diversity jurisdiction, the case must be remanded. For the foregoing reasons, RDS's Motion to Remand at **Docket 25** is **GRANTED**. The Motions to Dismiss at **Dockets 9, 19, and 20** are **DENIED AS MOOT**. RDS's Motion to Amend at **Docket 43** is likewise **DENIED AS MOOT**. Because Defendants had "an objectively reasonable basis for seeking removal,"[41] RDS's request for attorneys' fees is **DENIED**.

---

[41] *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

**IT IS SO ORDERED.**

ENTERED this 19th day of April, 2012.

                                             S/TIMOTHY M. BURGESS
                                             UNITED STATES DISTRICT JUDGE